JACK B. KING AND PAULA H. KING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
King v. Commissioner
Docket No. 7870-81.
United States Tax Court
T.C. Memo 1985-340; 1985 Tax Ct. Memo LEXIS 286; 50 T.C.M. (CCH) 387; T.C.M. (RIA) 85340; July 15, 1985. *286 P invests in a coal tax shelter where he signs a "Mining Lease," which is actually a sublease, affording P the option of paying the $114,000 royalty specified either by cash or a nonrecourse note. P simultaneously enters into a "Contract for the Sale of Coal" with C, giving a nonrecourse note to C in exchange for funds C made available to P, which P then turned over to lessor. No coal was mined or produced under the foregoing lease during 1977. Held, minimum royalty provision in sec. 1.612-3(b)(3), Income Tax Regs., Is valid following Wendland v. Commissioner,79 T.C. 355 (1982), affd. per curiam 739 F.2d 580 (11th Cir. 1984), affd. sub nom. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984), and Wing v. Commissioner,81 T.C. 17 (1983). Held further, advanced royalties petitioner "paid" in 1977 are not deductible because no coal was ever produced in 1977 and the royalties were not paid pursuant to a valid minimum royalty provision as provided in sec. 1.612-3(b)(3), Income Tax Regs.
Held further, damages are awarded under sec. 6673, I.R.C. *287 1954, for maintaining a groundless and frivolous claim. John Patrick Kelly, for the petitioners. John O. Kent, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined *288 a deficiency of $54,417 in petitioners' 1977 Federal income tax. The issues presented for consideration are: (1) Whether petitioners are entitled to deduct certain claimed "advanced minimum royalties" under section 1.612-3(b)(3), Income Tax Regs., and (2) whether damages should be awarded, sua sponte, under section 6673. [1]
FINDINGS OF FACT All of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated by this reference. [2]
Petitioners, Jack B. King and Paula H. King, resided in La Honda, California, at the time they filed the petition in this case. Petitioners filed their 1977 joint Federal income tax return with the Internal Revenue Service Center in Fresno, California. On their return, petitioners described their occupations as "Sales" (in insurance) and "Teacher" and deducted royalties in the amount of $185,250 on Schedule C as lessees of a coal mine. References *289 to petitioner in the singular will be to Jack B. King. This case presents the now-familiar coal lease shelter with a minumum annual royalty payment, most of which is "paid" by means of a nonrecourse note exclusively payable from mining receipts. On December 1, 1977, petitioner entered into a coal lease with Cambridge Corporation (Cambridge), which lease gave petitioner the right to mine merchantable coal at a specific location in Wyoming for a period of five calendar years plus the balance of 1977. In consideration for entering into the "Mining Lease," petitioner agreed to pay Cambridge a $100 lease deposit and a minimum annual royalty payment of $114,000. The minimum royalty was to be recoupable out of the amount received from coal sold or mined, removed and marketed. One-half of the minimum annual royalty payment for the first year of the lease was payable at the inception of the lease. The balance for the first year was payable on or before December 31, 1977, and the next four minimum annual royalty payments were payable on or before December 31 of the following four years. Petitioner was obligated to pay Cambridge a royalty payment to the same extent as if the coal and been *290 mined, removed, and marketed. In addition to the "Mining Lease," petitioner entered into an "Addendum to Mining Lease" with Cambridge. Pursuant to the Addendum, petitioner, as lessee, was given the option of paying the minimum annual royalty payments due on December 31, 1978, and thereafter as provided in the lease either by cash or nonrecourse note. If payment by note was desired, then the Addendum provided that petitioner was to pay Cambridge on this nonrecourse note from all coal mined from the leased premises in excess of 74,100 tons. [3]
Petitioner simultaneously entered into a "Contract for the Sale of Coal" with Poly-Tex International, Inc. (Poly-Tex) under which petitioner agreed to sell economically recoverable coal reserves to Poly-Tex for $259,350 (i.e., 74,100 tons at $3.50 per ton). Payment under the contract was to be made on December 31, 1982. However, *291 Poly-Tex was granted the right to extend this payment date until December 31, 1997. Payments of principal and interest prior to December 31, 1982, were to be made exclusively from receipts of coal mined, removed, and marketed. Pursuant to the "Contract for Sale," Poly-Tex was to make an initial payment of $128,250 upon execution of the contract and would pay the additional $131,100 at the rate of $2.00 a ton of coal sold or mined, removed and marketed. Petitioner also executed an "Authorization to Negotiate" authorizing Legal Mortgage Corporation [4] to make payment by check for proceeds Poly-Tex owed petitioner under "their" loan agreement and to deliver such check to Cambridge as payment of royalties due under the mining lease. Also pursuant to the "Authorization to Negotiate," Poly-Tex was to make a check payable to petitioner which petitioner would negotiate to Cambridge for the portion of the purchase price that was due upon execution of the lease. Petitioner was to "pay" Cambridge the second half of the annual minimum royalty for 1977 with proceeds from selling coal to Poly-Tex. The remaining *292 balance of the lease payable to Cambridge was to be paid out of the remaining proceeds of the sale to Poly-Tex.
On December 8, 1977, Poly-Tex issued a check payable to petitioner for $254,250 which was negotiated to Cambridge pursuant to the "Authorization to Negotiate." In addition, Legal Mortgage Corporation on the same date issued a check payable to petitioner for $113,000 which was also negotiated to Cambridge. [5]
All the transactional documents executed by petitioner, including the "Mining Lease," the "Addendum to Mining Lease," the "Non-Recourse Promissory Note," the "Authorization to Negotiate" and the "Contract for the Sale of Coal," appear to be part of a preprinted promotional package because all of the amounts have been written on blank lines of the documents otherwise all typewritten. No coal was mined or sold on the property petitioner leased during the year 1977. On their joint 1977 incomes tax return, petitioners attached a Schedule C for petitioner's coal mining business and claimed a deduction of $185,250 [6] for 1977 as a minimum royalty with respect to the Cambridge lease. Respondent, in *293 his notice of deficiency, disallowed petitioner's claimed coal mining deduction in full. OPINION With the exception of the amounts "invested," the factual pattern in this case is substantially similar to those in Oneal v. Commissioner, 84 T.C.     (June 4, 1985); Ward v. Commissioner,T.C. Memo. 1984-570 (on appeal, 9th Cir., Jan. 14, 1985); Thompson v. Commissioner,T.C. Memo. 1984-337; and Walls v. Commissioner,T.C. Memo. 1983-504. The only differences are the amounts involved and minor variations in some detail. The documents executed by petitioner in this case are substantially similar to those set forth in Oneal,Ward,Thompson, and Walls even down to the numbering of the paragraphs.[7] We held in those cases that the deduction claimed as "advanced mineral royalties" was not allowable under the amended provisions of section 1.612-3(b)(3), Income Tax Regs. *294 , because no coal was produced in the relevant year. This Court and two circuit courts of appeal have upheld the validity of amended section 1.612-3(b)(3), Income Tax Regs.Wendland v. Commissioner,739 F.2d 580 (11th Cir. 1984); Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984); Wing v. Commissioner,81 T.C. 17 (1983); Wendland v. Commissioner,79 T.C. 355 (1982), affd. per curiam 739 F.2d 580 (11th Cir. 1984), affd. sub nom. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984). Petitioners attack the validity of the regulations but do not present any new or different arguments. For example, petitioners argue that the doctrine of legislative reenactment invalidates the regulations.[8] Second, petitioners argue that the regulations are invalid because the Internal Revenue Service failed to comply with the Administrative Procedures Act *295 and the Service's own rules by establishing an effective date and suspending two revenue rulings in a news release, by not publishing the amended regulation at least 30 days before its effective date, by abusing its discretion under section 7805 and retroactively amending the regulations and by arguing that the general provisions of section 7805 control over a more specific section, such as section 612. Petitioners argue that all of these procedural attacks invalidate the regulations or that at least one of these attacks is sufficient to invalidate the regulations. This Court, however, has on several prior occasions confronted all of petitioners' arguments and has rejected them. Wendland v. Commissioner,supra; Wing v. Commissioner,supra;Surloff v. Commissioner,81 T.C. 210 (1983); Elkins v. Commissioner,81 T.C. 669 (1983). Due to the extensive rationale already set forth in the above-referenced opinions, nothing would be served to restate it here. We again conclude that the regulations are valid, relying on the cases cited above. *296 Petitioners next argue that the royalties were paid pursuant to a minimum royalty provision as provided in section 1.612-3(b)(3), Income Tax Regs.[9] Under the regulation, if no mineral product is produced during a given year, then no royalty deductions are allowed in that year unless royalties are paid or accrued as a result of a provision in the lease requiring that substantially uniform royalties be paid each year of the lease. In the instant case, no coal was mined or sold during 1977 on the property petitioner leased. Thus, in order for the royalty payment of $185,250 "paid" by petitioner to be deductible in 1977, the payment must have been made pursuant to a valid minimum royalty provision. *297 Respondent argues that, because petitioner was not required to make annual royalty payments in the absence of mineral production, the payment by petitioner does not satisfy the requirements set forth in section 1.612-3(b)(3), Income Tax Regs. In support of his position, respondent relies on the "Addendum to Mining Lease" which allows petitioner to make future annual royalty payments by the execution of a nonrecourse note. Under the terms of such nonrecourse note, payment would only be made from all coal mined in excess of the initial 74,100 tons. On several occasions we have addressed the question of whether a nonrecourse note constitutes payment for purposes of the minimum royalty provision under section 1.612-3(b)(3), Income Tax Regs.Wing v. Commissioner,supra;Thompson v. Commissioner,supra;Walls v. Commissioner,supra;Maddrix v. Commissioner,83 T.C. 613, 620-626 (1984). [10] In all of these cases, the taxpayers satisfied their obligation to pay an advance minimum royalty by executing an agreement where the taxpayer transferred some cash *298 and signed a nonrecourse promissory note in the balance amount payable generally in 10 years. The Government argued in these cases that the provision at issue did not constitute a "minimum royalty provision" because it allowed the taxpayer to defer the balance of the royalty for some years through the execution of a nonrecourse note, rather than requiring payment each year. See also Vastola v. Commissioner, 84 T.C.     (May 21, 1985). In adopting the Government's position that the provision in question did not constitute a valid "minimum royalty provision," we stated in Wing v. Commissioner,supra at 40-41, that: To qualify for the deduction, *299 the petitioner must meet the terms of the regulation, which sets out that a minimum royalty provision must require payment at least annually. That the note may in fact be paid at some later date is not sufficient to establish the existence of such a requirement. Our holdings and logic in Wing,Maddrix, and Vastola are squarely on point and clearly apply to the instant case. The "Addendum to Mining Lease" executed by the parties authorized the payment of all future annual minimum royalties for 1977 and subsequent years by means of nonrecourse notes due on December 31, 1997, with payment required only when coal in excess of the initial 74,100 tons was produced. Thus, regardless of the likelihood of the eventual satisfaction of such notes, the "Addendum to Mining Lease" permitted deferral of the minimum annual royalties provided for in the "Mining Lease" for the years 1977 and thereafter so that payment was not required to be made at least annually. Consequently, the $185,250 "payment" made by petitioner in 1977 was not made pursuant to a valid "minimum royalty provision" in accordance with valid section 1.612-3(b)(3), Income Tax Regs.
*300 The next issue we must decide is whether damages shall be awarded, sua sponte, under section 6673. [11] Petitioners do not make any new arguments. Moreover, no attempt was made to factually or legally distinguish their case from the clear and established precedent in this area. In fact, the brief submitted in this case is substantially identical to other briefs and memoranda filed with this Court dealing with coal shelters.[12] The similarities are too numerous to be a coincidence. Regardless of the reasons why the briefs are substantially similar, [13] this case has consumed precious time. In addition, petitioners through their counsel raise these same arguments in a case appealable to the Ninth Circuit which has already decided these issues. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984). *301 Petitioners present the same material facts that this Court has previously and frequently decided. Oneal v. Commissioner,supra, Ward v. Commissioner,supra,Thompson v. Commissioner,supra, and Walls v. Commissioner,supra.All of these cases concern tax shelters involving "payment" of royalties through nonrecoures notes which were payable exclusively from receipts of coal mined, removed, and marketed. The opinions in all of these cases except Oneal were published before the trial and submission of this case for our consideration. Petitioners through their counsel (who was also the counsel in Ward v. Commissioner,supra) [14] repetitiously raise the same issues already decided in Wendland v. Commissioner,supra, Redhouse v. Commissioner,supra,Wing v. Commissioner,supra,Thompson v. Commissioner,supra, and Walls v. Commissioner,supra.See also Vastola v. Commissioner,supra. While Wendland v. Commissioner,supra, was appealed to the Eleventh Circuit Court of Appeals, *302 the Eleventh Circuit affirmed the validity of the regulations on August 21, 1984, which was before the date set for trial of this case. Thus, petitioners were given adequate notice in advance of trial regarding similar cases involving the same facts and were provided notice of the law of the circuit to which their case is appealable. Notwithstanding the well established precedent, petitioners have presented no new or meritorious arguments to distinguish their case from the previously litigated and existing precedent. In fact, the forms used here appear prepackaged and preprinted because the investor or promoter merely had to fill in the blanks based on the amount of the deduction desired. Therefore, the only difference is the amount of money "invested" and, more importantly, the amount of deductions claimed. It is apparent from the facts of this case that petitioners were involved in an abusive tax shelter. Essentially, petitioners *303 have claimed a "leveraged" deduction based upon nonrecourse financing which is payable out of production, if any. This is tantamount to purchasing a tax deduction from the promoter who provides the facade of a legitimate business enterprise to satisfy the form of the transaction. This type of arrangement frustrates the congressional purpose inherent in the deductions that we here disallow to petitioners. In spite of numerous Court opinions squarely on point, petitioners have forced an already overburdened Court and tax system to unnecessarily consume precious resources. Petitioners, and others who participate in specious tax strategems, must accept the consequences of their actions. The conferees in discussing damages assessable under section 6673 stated that "[t]he conferees believe that, with this amendment, the Congress has given the Tax Court sufficient tools to manage its docket, and that the responsibility for effectively managing that docket and reducing the backlog now lies with the Tax Court." H. Rept. 98-861 (Conf. Rept.) (1984), 1984-3 C.B. (Vol. 2) 1, 239. Congress also noted with approval the steps this Court has taken in the tax shelter and tax protester *304 areas and stated that this "Court should take further action in these two areas, as well as to assert, without hesitancy in appropriate instances, the penalties that the Congress has provided." H. Rept. 98-861, supra at 239. We also have stated in Elliott v. Commissioner,84 T.C. 227, 248 (1985), that "[a]t some point, the arguments in these highly leveraged tax avoidance (or evasion) schemes must be regarded as 'frivolous or groundless,'" citing section 6673. We have frequently found that cases based upon meritless contentions and stale arguments that petitioners and their counsel raise are burdensome both on this Court and upon society as a whole. See Abrams v. Commissioner,82 T.C. 403 (1984). The time spent upon this case has delayed other cases of merit which could have provided new precedents to the tax system. Petitioners' brief, much like their abusive tax shelter "investment," was merely a prepackaged, pro forma presentation. Upon review of this record, we find petitioners' positions frivolous and groundless and that this proceeding was instituted and maintained primarily for delay. We admonish other petitioners and their counsel *305 not to maintain frivolous proceedings before this Court or to maintain them primarily for delay. We award damages to the United States, sua sponte, under section 6673 in the maximum amount of $5,000. To reflect the foregoing, A decision will be entered for respondent and an appropriate order will be entered for damages under section 6673.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year at issue.↩
2. Petitioners have failed to file reply briefs in this case.↩
3. The Addendum provided that payment upon the nonrecourse note was to be made "from all coal mined, in excess of the initial 74,100↩ tons, on the basis of $3.50 per ton of coal sold or mined, removed and marketed from the Leased Premises" for a total repayment of $259,350 (i.e., 74,100 tons at $3.50 a ton).
4. The documents interchangably use Legal Mortgage Company and Poly-Tex.↩
5. No explanation is given for how these amounts were derived.↩
6. Petitioners contend that they paid Cambridge $185,250 during 1977 which includes $114,000 as a minimum annual royalty and $71,250 as payment of their obligation to pay Cambridge a royalty payment to the same extent as if the coal had been mined, removed, and marketed.↩
7. We also note that Joseph R. Laird, Jr., Attorney at Law, was President of Cambridge Corporation here as well as President of Wyoming and Western Coal Reserves, Inc., involved in other coal shelters.↩
8. Petitioners argue that administrative practice reflected in the regulation prior to its 1977 amendment had acquired the force of law and, by virtue of the legislative reenactment doctrine, could not be altered without congressional action. We have held, however, that the legislative reenactment doctrine does not bar respondent from amending the regulation. Wing v. Commissioner,81 T.C. 17, 35-36 (1983); Wendland v. Commissioner,79 T.C. 355, 383-385 (1982), affd. per curiam 739 F.2d 580 (11th Cir. 1984), affd. sub nom. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984); Surloff v. Commissioner,81 T.C. 210 (1983); and several Memorandum Opinions of this Court, e.g., Gibson v. Commissioner,T.C. Memo. 1984-616, and Chidness v. Commissioner,T.C. Memo. 1984-612↩.
9. Sec. 1.612-3(b)(3) provides in pertinent part: The payor shall treat the advanced royalties paid or accrued in connection with mineral property as deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold. For purposes of the preceding sentence, in the case of mineral sold before production the mineral product is considered to be sold when the mineral is produced (i.e., when a mineral product first exists). However, in the case of advanced mineral royalties paid or accrued in connection with mineral property as a result of a minimum royalty provision, the payor, at his option, may instead treat the advanced royalties as deductions from gross income for the year in which the advanced royalties are paid or accrued. See section 446↩ (relating to general rule for methods of accounting) and the regulations thereunder. For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. For purposes of the preceding sentence, in the case of a lease which is subject to renewal or extension, the period for which it can be renewed or extended shall be treated as part of the term of the original lease. * * *
10. This Court on numerous occasions has held that the contingent nature of nonrecourse notes does not establish an enforceable requirement that substantially uniform minimum royalties be paid annually, regardless of annual production. Wing v. Commissioner,supra;Surloff v. Commissioner,supra;Maddrix v. Commissioner,83 T.C. 613, 620-626 (1984); Vastola v. Commissioner,↩ 84 T.C.    ,     (May 21, 1985) (Slip Opinion at pages 11-12).
11. SEC. 6673. DAMAGES ASSESSABLE FOR INSTITUTING PROCEEDINGS BEFORE THE TAX COURT PRIMARILY FOR DELAY, ETC. Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax. ↩
12. The brief submitted in this case is identical, even including typographical errors, to briefs and memoranda that were filed in cases already decided by this Court before this case went to trial. Counsel merely used different figures in the first few pages dealing with the facts to apply to this case. ↩
13. In the information that petitioner received involving this coal shelter, petitioner was informed that Joseph R. Laird, Jr., Attorney at Law, and President of Cambridge, "personally guarantee[d] performance by Cambridge Corporation of its undertaking to provide legal representation to you in the event that the Internal Revenue Service attacks the projected tax treatment."↩
14. John Patrick Kelly is also counsel for taxpayers in several cases before this Court at this time. For example, Nichols v. Commissioner,T.C. Memo 1985-338, and Rosebrough v. Commissioner,T.C. Memo 1985-339↩.